THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JINGSHENG ZHU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 C 3381 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| NATIONAL CREDIT SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Plaintiff's motion to remand this case to the Circuit Court of Cook County for lack of Article III standing. (Dkt. 14). Plaintiff's motion to remand [14] is granted.

## BACKGROUND

On May 4, 2020, National Credit Systems, Inc. ("NCS") sent Jingsheng Zhu a debt collection letter. (Dkt. 1-1 at ¶ 22). The letter listed "Fifty One Zero Seven S Blackstone Ave Apts/5107-803" as the current creditor, which is a nonexistent legal entity. (*Id.* ¶¶ 25–26). Zhu claims this information confused him as to whom he allegedly owed the debt. (*Id.* ¶ 31). On July 24, 2020, Zhu filed suit before this Court[1] claiming NCS's letter violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*

On February 16, 2021, Zhu moved to dismiss his claims without prejudice given new Seventh Circuit law narrowing the scope of Article III standing under the FDCPA. (*See Zhu I* at Dkt. 18). His case was dismissed without prejudice on May 12, 2021. (*Id.* at Dkt. 25). Zhu re-filed his claims in state court, (Dkt. 1-1), and NCS removed this case to federal court on the basis of federal question jurisdiction, (Dkt. 1). Zhu now moves to remand back to the Circuit Court of Cook County and for fees and costs, maintaining that he lacks standing to pursue his claims in federal court. (Dkt. 14).

## LEGAL STANDARD

As the party invoking federal jurisdiction, NCS bears the burden of establishing Zhu's Article III standing. *See Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352–53 (7th Cir. 2017) (explaining that "the party seeking removal . . . bears the burden of establishing federal jurisdiction"); *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) ("As the party invoking federal jurisdiction, [Defendant] had to establish that all elements of jurisdiction—including Article III standing—existed at the time of removal."). To establish that Zhu has Article III standing, NCS must demonstrate that Marquez alleges an injury-in-fact that was caused by NCS

---

[1] *See* Case No. 1:20-cv-4352 ("*Zhu I*").

and that is redressable by this Court. *See Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) ("The 'irreducible constitutional minimum of standing' consists of three elements: injury-in-fact, causation, and redressability.").

An injury in fact is an injury that is "concrete and particularized" and "actual and imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1548 (2016). To be concrete, an injury "must be '*de facto*'; that is, it must actually exist." *Id.* (quoting Black's Law Dictionary 479 (9th ed. 2009)). Although both "tangible" and "intangible" injuries, even those that are "difficult to prove or measure," can be concrete, "a bare procedural violation, divorced from any concrete harm," does not "satisfy the injury-in-fact requirement of Article III." *Id.* at 1548–49. A statutory violation must present an " 'appreciable risk of harm to the underlying interest [the legislature] sought to protect by enacting the statute' " to cause a concrete injury for Article III standing. *Groshek*, 865 F.3d at 887 (quoting *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016)).

## DISCUSSION

### I. Remand

In his motion to remand, Zhu argues that he lacks Article III standing. In particular, he asserts that based on a series of recent decisions binding on this Court, NCS cannot establish that Zhu suffered a concrete harm – and therefore, this suit belongs in state court. (Dkt. 14 at 4, 7; *see also, e.g.*, Dkt. 18 ¶ 7). *Cf. Protect Our Parks, Inc. v. Chi. Park Dist.*, 971 F.3d 722, 731 (7th Cir. 2020) ("Article III does not apply to the states, so 'state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability.' ") (citation omitted). The Seventh Circuit recently explained that a violation of the FDCPA "does not, by itself, cause an injury in fact" sufficient to confer Article III standing. *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 779 (7th Cir. 2021) (referencing "eight times" in "the last five months" that the Court reached this same conclusion). *See also Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 ("[A] plaintiff cannot establish standing simply by pointing to a mere procedural violation of a statute.") (citing *Spokeo*, 136 S. Ct. at 1549). Instead, "an FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." *Id.* at 780; *see also Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 710 (7th Cir. 2021) (explaining same where debtor pays money she does not owe); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020) (explaining same where debtor "pay[s] something she does not owe, or [pays] a debt with interest running at a low rate when the money could have been used to pay a debt with interest running at a higher rate").

NCS has not established that its letter caused Zhu concrete harm under the Act. Zhu has not alleged that he paid money or otherwise took direct, concrete action to his detriment as a result of NCS's purported FDCPA violation. Zhu only claims that he was "<u>confused</u> who the 'Current Creditor' of the alleged debt was, since the letter [did] not provide this information." (Dkt. 1-1 ¶ 31 (emphasis added)). Ample Seventh Circuit case law demonstrates that such allegations fail to establish Article III standing. *Wadsworth*, 12 F.4th at 668 (explaining that confusion is not a concrete injury sufficient for Article III standing requirements); *Markakos*, 997 F.3d at 781 (same);

2

*Pennell v. Global Trust Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (same); *Smith*, 986 F.3d at 710 (same); *Brunett*, 982 F.3d at 1068 (same). *See also, e.g.*, *Marcano v. Nationwide Credit & Coll., Inc.*, No. 20-cv-1803, 2021 WL 4523218, at *6 (N.D. Ill. Oct. 4, 2021) (holding that confusion is not a concrete injury that confers Article III standing in FDCPA actions); *Deiker v. TrueAccord Corp.*, No. 20-cv-669, 2021 WL 4502138, at *3 (N.D. Ill. Sept. 30, 2021) (same); *Hall v. Altus Legal, LLC*, No. 20-cv-5539, 2021 WL 4243510, at *2 (N.D. Ill. Sept. 17, 2021) (same); *Tataru v. RGS Fin., Inc.*, No. 18-cv-6106, 2021 WL 1614517, at *1, 3 (N.D. Ill. Apr. 26, 2021) (same). In keeping with this binding law, Zhu lacks standing to proceed before this Court.

NCS sets forth several arguments encouraging the Court to infer allegations of concrete harm in Zhu's complaint where there are none. (Dkt. 18 ¶ 7). First, NCS contends that Zhu's allegations show the defective letter *did* "affect[] Plaintiff's actions regarding the debt or made him worse off, thereby causing him an injury for Article III standing." (*Id.* ¶ 10). Specifically, per NCS: "*If* [Zhu] paid the debt, *then* he would plausibly have suffered a concrete injury by paying a debt that he did not owe. *If* he refused to pay the debt . . . *then* he would be harmed by NCS's efforts to collect the debt." (*Id.* (emphasis added)). Again, however, these hypothetical allegations are simply not set forth in the Complaint. Zhu only claims that he was "confused" by the Defendant's defective letter. (Dkt. 1-1 ¶ 31). He does *not* claim that the letter falsely induced him to pay a debt, nor that the letter "otherwise alter[ed his] response to a debt" at all. *Markakos*, 997 F.3d at 780. Zhu's complaint is equally devoid of any allegation that he "refused to pay the debt" – let alone that he suffered repercussions because of that refusal. As in *Markakos*, Zhu "has not alleged any way in which the alleged misinformation in [NCS's] letter[] injured [him]. In fact, [he has] shown the opposite." *Markakos*, 997 F.3d at 781. Therefore, NCS's argument on this point fails to establish Article III standing. *See also, e.g.*, *Montgomery v. Everest Receivable Servs., Inc.*, No. 21-cv-3535, 2021 WL 4806388, at *2 (N.D. Ill. Oct. 14, 2021) (granting plaintiff's motion to remand, over defendants' objection, where the four corners of plaintiff's complaint did not allege any "appreciable risk of harm" flowing from the defendants' communications).

Next, NCS contends that although Zhu claims "he has not alleged that he paid money as a result of Defendant's deceptive communications," Zhu nonetheless "does not *deny* that he paid money as a result of NCS's alleged actions." (Dkt. 18 ¶ 11). In the absence of that denial, NCS pleads the Court to find that Zhu suffered concrete harm sufficient to establish standing. Similarly, although Zhu has not alleged that he "took direct, concrete action to his detriment as a result of Defendant's violations of the FDCPA," NCS emphasizes that the Complaint does not *deny* those facts, either. (*Id.*). These and other arguments in the same vein, (*id.*), fail to establish Zhu's standing. As master of his complaint, Zhu had the ultimate say in what claims he brought or chose not to bring against NCS. *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Zhu only claims that he suffered confusion as a result of NCS's actions in this case, and the two Counts in his Complaint are tailored specifically to that alleged harm alone. (Dkt. 1-1 ¶¶ 31, 37–42). It was not Zhu's burden – as the plaintiff – to address, much less affirmatively deny facts wholly unrelated to the claims he chose to bring. Defendant cannot wish itself into federal court by injecting new claims into the Complaint. *Cf. Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) ("[A] defendant may not [generally] remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law.") (emphasis in original) (citations omitted); *Merrell Dow Pharms. Inc.*

*v. Thompson*, 478 U.S. 804, 809 n.6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced.").

Despite NCS's position otherwise, *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 280 (7th Cir. 2020) does not control the outcome in this case. There, the Court ruled that the plaintiff's complaint "may survive dismissal as a matter of pleading" even though she failed to explicitly plead a concrete injury sufficient for Article III standing. (*Id.* at 277, 280). "What matters is whether the allegations support a plausible inference that [plaintiff] *suffered a concrete detriment to her debt-management choices*," and the Court ruled that they did. *Id.* at 280–81 (emphasis added). The present case is distinguishable in numerous respects, including with respect to its procedural posture. Most relevantly, however, Zhu alleges no facts that can give rise to an inference that he took direct, concrete action to his detriment, including with respect to his "debt-management choices." As above, this is fatal to NCS's position.

Finally, NCS argues that Zhu's request for actual damages "implies that he suffered an actual injury" sufficient to establish standing. (Dkt. 18 ¶¶ 8, 11). This argument is foreclosed by Seventh Circuit precedent holding that where a complaint "d[oes] not describe any concrete harm that the plaintiffs had suffered" from the defendant's alleged misconduct, "[a] mere reference to 'actual damages' in the complaint's prayer for relief does not establish Article III standing." *Collier v. SP Plus Corp.*, 889 F.3d 894, 895–96 (7th Cir. 2018). *See also, e.g.*, *Montgomery*, 2021 WL 4806388, at *3.

## II. Costs and Fees

The removal statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has held that "the standard for awarding fees [under § 1447(c)] should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). *See also, e.g.*, *Barnes v. Arytza, LLC*, 288 F. Supp. 3d 834, 840 (N.D. Ill. 2017) (awarding attorney's fees to party seeking remand and stating "[i]t was incumbent on Defendant . . . to consider the Article III standing issue when it removed the action").

Zhu argues that NCS lacked an objectively reasonable basis for removal given Seventh Circuit law that mere confusion flowing from an FDCPA violation is not a concrete injury sufficient for Article III standing. (Dkt. 14 at 9). Zhu further highlights that NCS's removal "completely contradicts this Court's previous findings" in *Zhu I*. (*Id.*). In opposition, NCS maintains that "Plaintiff's Complaint intentionally fails to disclose facts necessary to determine jurisdiction." (Dkt. 18 ¶ 17). NCS claims the Complaint "is silent on whether Plaintiff took specific action to his detriment," and that if Plaintiff "specifically plead[ed] that he did not suffer any injuries . . . then he could have avoided the removal procedure on which he complains." (*Id.*).

NCS lacked an objectively reasonable basis to seek removal. On May 12, 2021, this Court dismissed *Zhu I* for lack of Article III standing since his only alleged harm was confusion. (*See*

*Zhu I* at Dkt. 25). The order of dismissal cited Seventh Circuit case law – including many of the same cases discussed herein – holding that "mere confusion by a letter that violates the FDCPA, even one alleged to be deceptive, is insufficient to establish an injury in fact for Article III standing purposes." (*Id.* at 3). Following dismissal, on May 14, 2021, the Seventh Circuit again reaffirmed that an alleged harm of "confusion" will not confer Article III standing. *See Markakos*, 997 F.3d 778.

Zhu filed a complaint in state court that is substantively equivalent to the *Zhu I* complaint. (*Compare, e.g.*, Dkt. 1-1 ¶ 31 ("Plaintiff was confused who the 'Current Creditor' of the alleged debt was, since the letter does not provide this information."), *with Zhu I* at Dkt. 1 ¶ 24 (stating same verbatim)). Specifically, Zhu's state court complaint still only alleges harm in the form of confusion; it contains no new allegations that would confer Article III standing per Seventh Circuit law. Nonetheless, on June 23, 2021 – just over one month following the dismissal of *Zhu I* – NCS hailed the plaintiff back to federal court. (Dkt. 1). This has forced the parties to re-litigate an issue already fully addressed by this Court in *Zhu I*, and one which is fatally undermined by recent, binding precedent. Removal was simply not reasonable under these circumstances. Therefore, NCS shall compensate Zhu for the costs and fees he incurred as a result of removal.

## **CONCLUSION**

For the foregoing reasons, Zhu's motion to remand [14] is granted. The Clerk of Court is directed to remand case to the Circuit Court of Cook County, Illinois, forthwith.

Virginia M. Kendall
United States District Judge

Date: October 27, 2021

5